WO   IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


| | |
|---|---|
| GRETCHEN C. HOUSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ANDREW M. SAUL, Commissioner of Social ) | |
| Secretary Administration, ) | |
| ) | No. 3:19-cv-0107-HRH |
| Defendant. ) | |
| _____) | |

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff Gretchen Charmaine House has timely filed her opening brief,[1] to which defendant, Andrew M. Saul,[2] has timely responded. Oral argument was not requested and is not deemed necessary.

Procedural Background

On July 22, 2016, plaintiff filed applications for disability benefits under Title II and Title XVI of the Social Security Act, alleging that she became disabled on July 13, 2016.

---

[1]Docket No. 12

[2]Docket No. 15.

Plaintiff alleges that she is disabled due to a learning disability, bipolar disorder, anxiety, and severe depression. Plaintiff's applications were denied initially, and plaintiff requested a hearing. After an administrative hearing on April 6, 2018, an administrative law judge (ALJ) denied plaintiff's application. Plaintiff sought review of the ALJ's unfavorable decision. On March 26, 2019, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's May 10, 2018 decision the final decision of the Commissioner. On April 17, 2019, plaintiff commenced this action in which she asks the court to review the Commissioner's final decision.

## General Background

Plaintiff was born on July 3, 1969. Plaintiff was 47 years old on her alleged onset date. Plaintiff was in special education services while in school. She received a GED in her 20s. Plaintiff's past relevant work was as a 4-1-1 operator, janitor, bagger, and busser.

## The ALJ's Decision

The ALJ first found that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2020."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 31.

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial
(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since July 13, 2016, the alleged onset date. . . ."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: depression, and mild intellectual disability. . . ."[6]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

---

[4](...continued)
  gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
  Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
  Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
  Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
  Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 31.

[6]Admin. Rec. at 31.

in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[7] The ALJ considered Listings 12.04 (depressive, bipolar and related disorders), 12.05 (intellectual disorder), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). The ALJ considered the "paragraph B" criteria and found that plaintiff had moderate limitations in understanding, remembering, or applying information; marked limitations as to concentrating, persisting, or maintaining pace; and moderate limitations as to adapting or managing oneself.[8] But "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation," the ALJ found that "the 'paragraph B' criteria are not satisfied."[9] The ALJ also found that the "paragraph C" criteria were not met.[10]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant is limited to simple, routine, and repetitive tasks. The claimant can have no changes in the work setting. The claimant can perform work involving only superfi-

---

[7]Admin. Rec. at 32.

[8]Admin. Rec. at 32-33.

[9]Admin. Rec. at 33.

[10]Admin. Rec. at 33.

cial decision making and not requiring high production rate such as assembly line work.[11]

The ALJ found plaintiff's symptom statements less than credible because they were inconsistent with the objective medical evidence, because they were inconsistent with her daily activities, and because she received unemployment benefits in the third and fourth quarters of 2016.[12]

The ALJ considered the lay testimony of plaintiff's daughter.[13] The ALJ gave Dr. Winn's opinion[14] some weight but gave more weight[15] to Dr. Buechner's opinion.[16]

---

[11]Admin. Rec. at 34-35.

[12]Admin. Rec. at 37-39.

[13]Admin. Rec. at 39. Amy Jones completed a function report on October 12, 2016. Admin. Rec. at 282-290.

[14]The ALJ referred to Dr. McGinness, but presumably meant Dr. Winn. On June 30, 2009, Danielle Winn, Ph.D., opined that plaintiff had markedly limited ability to understand/remember/carry out detailed instructions; moderately limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the public, and respond appropriately to changes in the work setting; but was otherwise not significantly limited. Admin. Rec. at 93-94. Dr. Winn opined that plaintiff could "carry out simple, routine tasks w/ adequate memory and understanding[,]" was "[c]apable of simple work tasks for a regular workday/workweek[,]" was "[c]apable of work with nominal social interactions[,]" and was "[c]apable of work that is routine and predictable in nature." Admin. Rec. at 93-94.

[15]Admin. Rec. at 39-40.

[16]Cheryl Buechner, Ph.D., testified as a medical expert. Dr. Buechner opined that plaintiff had moderate limitations as to understanding, remembering, or applying information; mild limitations as to interacting with others; marked limitations as to concentration,
(continued...)

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as a 4-1-1 operator and stocker."[17]

The ALJ made an alternative step five finding that "there are other jobs existing in the national economy that [plaintiff] is also able to perform[,]"[18] including working as a parking lot attendant or a car wash attendant.[19]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from July 13, 2016, through the date of this decision. . . ."[20]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence

---

[16](...continued)
persistence, or pace; and moderate limitations as to adapting or managing herself. Admin. Rec. at 57. Dr. Buechner also opined that plaintiff would have the ability to perform simple, routine, and repetitive tasks as long as she was not required to switch between tasks. Admin. Rec. at 59.

[17]Admin. Rec. at 40.

[18]Admin. Rec. at 40.

[19]Admin. Rec. at 40-41.

[20]Admin. Rec. at 41.

is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff argues that the ALJ erred at step four. "At step four of the sequential evaluation, the ALJ . . . determines whether the claimant can perform his or her past relevant work" based on the RFC that the ALJ has assessed. Johnson v. Colvin, 31 F. Supp. 3d 1262, 1272 (E.D. Wash. 2014). The ALJ found that plaintiff was

> limited to simple, routine, and repetitive tasks. The claimant can have no changes in the work setting. The claimant can perform work involving only superficial decision making and not requiring high production rate such as assembly line work.[21]

---

[21]Admin. Rec. at 34-35.

Based on this RFC, the ALJ found that plaintiff was "capable of performing past relevant work as a 4-1-1 operator and stocker."[22] The ALJ noted that the 4-1-1 operator has a DOT number of 235.662-026, is sedentary work, and has a SVP (specific vocational preparation) of 3.[23] The ALJ noted that the stocker has a DOT number of 290.477-014,[24] is light work, and has a SVP of 3.[25] This was based on the testimony of the vocational expert.[26]

Both past jobs identified by the ALJ at step four have a reasoning level of 3. In Zavalin v. Colvin, 778 F.3d 842 (9th Cir. 2015), the Ninth Circuit held that "'there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning'" and that "an ALJ must recognize and resolve such a conflict during administrative proceedings." Shaibi v. Berryhill, 883 F.3d 1102, 1110 n.7 (9th Cir. 2017) (quoting Zavalin, 778 F.3d at 847). Here, the ALJ made no mention of the Level 3 Reasoning required for plaintiff's past relevant work as a 4-1-1 operator and a stocker. All the ALJ did was make a general statement that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the

---

[22] Admin. Rec. at 40.

[23] Admin. Rec. at 40.

[24] The ALJ appears to have used the incorrect DOT number for a stocker. DOT number 290.477-014 is for a stock clerk. The DOT number for a stocker is 299.367-014. But both jobs are considered light work and have a SVP of 3 and a reasoning level of 3.

[25] Admin. Rec. at 40.

[26] Admin. Rec. at 75-76.

undersigned finds that the claimant is able to perform it as generally performed."[27] The ALJ also pointed out that the vocational expert had testified that plaintiff had the residual functional capacity to perform these two jobs,[28] but the vocational expert did not specifically address the Level 3 Reasoning required for these jobs either.[29] Thus, based on Zavalin, plaintiff argues that the ALJ erred at step four.

Defendant argues that there was no error here because the ALJ was not required to consider the level of reasoning required for plaintiff's past work at step four. The level of reasoning required for a job is part of the General Educational Development, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." Defendant argues that "[t]he GED pertains to the vocational factor of education, not to the residual functional capacity."[30] As such, defendant argues that a GED argument does not have any bearing on an ALJ's step four decision. Defendant cites to Miller v. Heckler, 770 F.2d 845 (9th Cir. 1985), for support. There, the court observed that "[t]he Secretary is required to produce vocational evidence only when the claimant has shown that he or she cannot perform any previous relevant work." Id. at

---

[27]Admin. Rec. at 40.

[28]Admin. Rec. at 40.

[29]Admin. Rec. at 74-79.

[30]Defendant's Brief at 4, Docket No. 15.

850. Defendant also argues that because plaintiff actually performed the two jobs in question, she clearly had sufficient education to perform these jobs.

Defendant argues that plaintiff's reliance on the holding in Zavalin is misplaced because it involved a step five error, not a step four error. "This distinction [can be] crucial because different standards govern an ALJ's step four determination than those that govern a determination at step five." Wolcott v. Colvin, Case No. 2:15-cv-1796-CKD, 2016 WL 3549603, at *5 (E.D. Cal. June 30, 2016). "At step four, a claimant has the burden to prove that he cannot perform his past relevant work 'either as actually performed or as generally performed in the national economy.'" Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016) (quoting Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002)). "ALJs may use either the 'actually performed test' or the 'generally performed test' when evaluating a claimant's ability to perform past work." Id. (quoting SSR 82-61, 1982 WL 31387 (1982)). The "generally performed test" is "similar to step five's requirement that the ALJ find the claimant can perform other work that exists in significant numbers in the national economy. . . ." Wolcott, 2016 WL 3549603, at *5.

Defendant's argument that the holding of Zavalin does not apply here because of the difference between a step four and a step five analysis would be convincing had the ALJ used the "actually performed test." However, the ALJ expressly stated that he found that plaintiff

was able to perform her past relevant work "as generally performed."[31] Because the analysis that the ALJ used at step four in this case was largely similar to the analysis used at step five, the holding of Zavalin applies here.

If Zavalin applies, which it does, there is no question that the ALJ erred at step four. The ALJ found that plaintiff could perform her past relevant work that required Level 3 Reasoning even though she was limited to performing simple, repetitive tasks, but the ALJ did not explain this apparent conflict.

The question then becomes whether this error was harmless. An error is harmless if it "was inconsequential to the ultimate nondisability determination." Stout, 454 F.3d at 1055.

Defendant argues that the ALJ's step four error was harmless based on Zavalin. In Zavalin, 778 F.3d at 847-48, after the court determined that the ALJ had erred at step five by failing to reconcile "the apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning," the court considered whether this error was harmless. The court considered if the record demonstrated whether Zavalin would be able to actually perform the jobs in question and implied that if it could determine that Zavalin could actually perform the jobs, then any error would have been harmless. Id. at 848. Defendant argues that similarly here, the court should find the ALJ's step four error harmless because the record shows that plaintiff was capable of performing her past relevant work.

---

[31]Admin. Rec. at 40.

But what the record demonstrates is that plaintiff could perform these jobs in the past, i.e., before she allegedly became disabled. The record does not necessarily demonstrate that plaintiff would be able to perform these jobs now. Defendant basically seems to be arguing that because plaintiff could do these jobs in the past, she must be able to do them now. But if that were so, then no claimant would ever get past step four of the sequential analysis.

Nonetheless, the ALJ's step four error may still be harmless because the ALJ made alternative step five finding. A step four error will be harmless if "the ALJ properly decided that [the claimant] could perform other work in the economy." Tommasetti v. Astrue, 533 F.3d 1035, 1037 (9th Cir. 2008). But here, plaintiff argues that the ALJ did not properly find that she could perform other work in the economy.

At step five, based on the testimony of the vocational expert, the ALJ found that plaintiff could work as a parking lot attendant, which has a DOT number of 915.473-010, is light work, and has a SVP of 2.[32] The ALJ also found that plaintiff could work as a car wash attendant, which has a DOT number of 915.667–010, is light work, and has a SVP of 2.[33] Both of these jobs also require Level 2 Reasoning.

Plaintiff argues that her RFC, which limits her "to simple, routine, and repetitive tasks" and "no changes in the work setting[,]"[34] precludes her from work requiring Level 2

---

[32]Admin. Rec. at 41.

[33]Admin. Rec. at 41.

[34]Admin. Rec. at 35.

Reasoning. "Level Two reasoning . . . requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'" Rounds v. Commissioner Social Sec. Admin., 807 F.3d 996, 1003 (9th Cir. 2015). "Courts are divided on the question of whether the ability to perform simple, routine, repetitive work is consistent with Reasoning Level 2, and there is no Ninth Circuit controlling precedent." Gottschalk v. Colvin, Case No. 6:13–cv–00125–JE, 2014 WL 1745000, at *4 (D. Or. May 1, 2014). In Rounds, the Ninth Circuit held that "[t]here was an apparent conflict between Rounds' RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning[.]" Rounds, 807 F.3d at 1003. But, limiting a claimant to performing one- and two-step tasks is not necessarily the same thing as limiting a claimant to performing simple, routine, and repetitive tasks. But, plaintiff argues that the "no changes in work setting" is more in line with Level One Reasoning, which requires the claimant be able to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." Plaintiff argues that the criterion for "no variables" corresponds to "no changes in the work setting" and thus the ALJ should have explained how she could do Level Two Reasoning jobs when she was limited to "no changes in the work setting."

Here, there is an unresolved question as to whether plaintiff's RFC was consistent with Level Two Reasoning jobs. Level 1 Reasoning appears to be more analogous to the ALJ's assessed limitation of "no changes in the work setting." Thus, there was a conflict between the vocational expert's testimony and the DOT, which the ALJ should have

addressed in his decision. "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." Zavalin, 778 F.3d at 846. Because the ALJ did not do so here, he improperly found that plaintiff could perform other work, which means that his step four error was not harmless.

If the ALJ erred, which he did, plaintiff requests that this matter be remanded for further proceedings. A "[r]emand for further administrative proceedings is appropriate" here because "enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted).

## Conclusion

The decision of the Commissioner is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 3rd day of October, 2019.

/s/ H. Russel Holland
United States District Judge